Mr. W. Kelvin Wyrick Attorney at Law 610 Laurel Street Post Office Box 63 Texarkana, Arkansas 71854-0023
Dear Mr. Wyrick:
I am writing in response to your request for an opinion, presumably made pursuant to A.C.A. § 25-19-105(c)(3)(B), and on behalf of your client (an Arkansas Highway Police Corporal) on the following issues:
 I would like to know if the Arkansas Highway Police has violated the Arkansas FOIA Act by not providing [the patrolman requestor] with the following information that he has previously requested:
 1. All written investigation reports made as a result of the complaint made by [the patrolman requestor], concerning alleged misconduct of [an Arkansas Highway Patrol Captain] for driving his A.H.P. car over one mile into the state of Texas on personal business as stated in the complaint dated September 20, 2007 at 3:15 p.m.
 2. [The patrolman requestor] has also requested a copy of the written disposition of the complaint filed by himself against [the Captain]. The custodial response to this request was not consistent with prior discipline for this type of incident.
 3. According to the response attached hereto, there has been a final administrative resolution concerning any suspension or termination proceeding under [Op. Att'y Gen.] 2004-012. *Page 2 
The records provided to [the patrolman requestor] did not address this at all.
 4. In the event the Highway Police are holding on to their job performance records of [the Captain] and denying their release would cause a person to assume that no action was ever taken because of the position held by [the Captain]. The Attorney General's Office should conduct an investigation or at least require the Arkansas Highway Police to conduct an independent investigation of this matter.
 5. The records in question must have formed a basis for any decision that was made in that proceeding to suspend, discipline, or to terminate the employee.
 6. There is a compelling public interest in the disclosure of the records pertaining to any discipline in question, because others including [the patrolman requestor] have been disciplined for being on the wrong side of Stateline Avenue in a State owned vehicle. The applications of the standards do not appear to be the same for all employees. The public should know if the rules of this agency are applied in a uniform and consistent manner. Because of the high-ranking supervisory position of [the Captain] any disciplinary action is a relevant factor in determining whether a compelling public interest exists. See J. Watkins, The Arkansas Freedom of Information Act 146-147 (M M Press 3rd 1998)[sic[1] ]. If not, then [the patrolman requestor] should be restored to all prior privileges, i.e. use of State vehicle, etc.
 [The patrolman requestor] is entitled to know if the disposition of the complaint against [the Captain] is consistent with the discipline that was given to [the patrolman requestor] by [the Captain] in 2001, when [the patrolman requestor] drove his A.H.P. car to a store on Stateline Avenue in Texarkana, Texas. This store was *Page 3 
approximately 60 feet from the border of Arkansas. [The patrolman requestor] wore his uniform and I.D. badge.
 [The patrolman requestor] received two replies from [the custodian]. The first reply was on December 5, 2007, and it stated appropriate action had been taken after an inquiry was conducted. The second letter received was also sent to [the patrolman requestor] on December 5, 2007, by certified mail stating "Your request for all investigation reports has been deemed not subject to release and is denied." No other explanation was given. We believe if action was taken against [the Captain], it should be released under the FOI Act as required by law.
RESPONSE
In my opinion, assuming that there has been no suspension or termination of the subject of the records, or that any one of the other prerequisites for the release of these records has not been met, the custodian's decision is in all likelihood consistent with the Freedom of Information Act.
I assume as an initial matter that you are representing the patrolman requestor ("requestor") in this matter. As counsel for the requestor, you are authorized to seek my opinion in this matter. See, e.g., Ops. Att'y Gen. 2006-035; and 2005-236. In this regard, A.C.A. §25-19-105(c)(3)(B) (Supp. 2007) requires that I issue an opinion upon request of the custodian, subject, or requestor of "personnel records" or "employee evaluation or job performance records" and state whether the decision of the custodian with regard to release of the records is consistent with the Arkansas Freedom of Information Act ("FOIA"). This duty does not extend to determinations of whether the FOIA has been violated, whether an "independent investigation" is warranted, or resolution of disputed factual issues. In this respect, the following opinion will address only whether the decision of the custodian of records for the Arkansas Highway Police ("A.H.P.") to withhold requested records was consistent with the FOIA.
I have not been provided with a copy of the records in question. From your request, it appears that the requestor requested: 1) copies of "all written investigative reports" that resulted from a complaint being filed by your client against the captain; and 2) a "written copy of the disposition of the complaint." *Page 4 
The custodian substantially denied the request for records.[2] Because I cannot definitively opine on whether documents I have not reviewed are or are not subject to release, I am limited to setting forth the general standard for determining whether a "personnel record" or an "employee evaluation or job performance record" is releasable under the FOIA.
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2007). Given that the records requested are records of a law enforcement agency, it is apparent that the records fit within the broad definition of "public records" recited above. As my predecessor noted in Op. Att'y Gen. 99-305 "if records fit within the definition of `public records' . . ., they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law." The relevant exemption in this instance is the one for "employee evaluation or job performance records," A.C.A. § 25-19-105(c)(1).
Written Investigative Reports
It is important to first classify these documents as either "personnel records" or "employee evaluation or job performance records" in order to apply the appropriate standard to determine whether the documents should be released under *Page 5 
the FOIA. In my opinion, based on the descriptions provided in your request, the "written investigative reports" appear to be "employee evaluation or job performance records." The FOIA does not define the term "employee evaluation or job performance records," nor has the phrase been construed judicially. This office has consistently taken the position that any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records.See, e.g., Ops. Att'y Gen. 2006-038; 2006-035; 2005-030; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; and 93-055. The record must also have been created for the purpose of evaluating an employee.See, e.g., Op. Att'y Gen. 2006-038; and 2004-012. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See J. Watkins R. Peltz,The Arkansas Freedom of Information Act (m m Press, 4th ed. 2004) at 196.
According to opinions of this office, documents such as written reprimands and letters of caution, documents supporting a recommendation for suspension or dismissal, letters related to promotions and demotions, and records that were generated as part of an investigationof allegations of the misconduct and that detail incidents that gaverise to such allegations generally fall within the category of "employee evaluations or job performance records." See, e.g., Ops. Att'y Gen.2006-035; 2003-078; 2001-203; 99-147; 93-105; 93-055; 92-231;and 91-324.
The "written investigative reports," in my opinion, thus appear to be "employee evaluation or job performance records." A "written investigative report" that was created by the A.H.P. as part of an investigation of a complaint would be a record created by the employer for the purpose of evaluating an employee's performance or lack of performance investigating the allegations of misconduct.
"Employee evaluation or job performance records" are releasable only if the following three conditions have been met:
 1. There has been a final administrative resolution of any suspension or termination proceeding;
 2. The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and *Page 7 
 3. There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1). Employee evaluation or job performance records cannot be released unless each prong of this test has been met.
Despite your assertions to the contrary in your request, the mere fact that a disciplinary proceeding has had a final administrative resolution does not warrant releasing an "employee evaluation or job performance record." Rather, the disciplinary proceeding must have had a final administrative resolution resulting in "suspension or termination." Suspension or termination is a threshold requirement for the release of "employee evaluation or job performance records." Ops. Att'y Gen.2007-025; 2006-150; 2005-267; 2001-125; and 97-189. It is not clear from your request whether a suspension or termination has occurred, nor is it clear from the custodian's response the reason for exempting these documents. If any of the above prongs were not met, such as no imposition of suspension or termination, the written investigative reports generated pursuant to investigation of the complaint would not be disclosable under the FOIA.[3]
Written Disposition of the Complaint
I have not reviewed any responsive documents in this regard and cannot, therefore, conclusively opine whether the custodian acted consistently with the FOIA.
It appears, however, that documents reflecting the disposition of a complaint would in all likelihood constitute "employee evaluation or job performance records" for the purposes of the FOIA. See, e.g., Ops. Att'y Gen. 2002-055 (memo entitled "Disposition of Complaint" was properly classified as "employee *Page 7 
evaluation or job performance record"); 98-210 (disposition records are subject to inspection and copying only to the extent that they formed a basis for suspension or termination); and 94-127 (records detailing the disposition of disciplinary action generally fall within "employee evaluation or job performance records" category).[4]
If properly classified as "employee evaluation or job performance records," the responsive documents would be subject to the same standard set forth above and are not subject to disclosure unless all of the prongs of that test have been met.
Assuming there has been no suspension or termination of the subject of the records, or that any of the other prongs of the applicable test has not been met, in my opinion the custodian's decision is in all likelihood consistent with the FOIA.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Initially, I note that the current edition of this treatise is properly cited as, J. Watkins R. Peltz, The Arkansas Freedom ofInformation Act (m m Press 4th ed., 2004).
[2] The custodian's response indicates that at least one document responsive to the request was provided. You have not indicated the nature of this document, but it may be the letter stating that "appropriate action was taken." From the information available to me, however, I am uncertain what, if any, documents your client received in response to his FOIA request.
[3] With respect to the third prong of the test, the FOIA does not define the phrase "compelling public interest." Professors Watkins and Peltz note that "the status of the employee" or "his rank within the bureaucratic hierarchy" may be relevant in determining whether a "compelling public interest" exists. Watkins Peltz, supra at 206 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue."). I and my predecessors have previously stated, however, on this general topic, that a compelling public interest likely exists in information reflecting a violation of departmental rules by a "cop on the beat" in his interactions with the public. See Ops. Att'y Gen. 2008-004; 2007-206; and 2006-106. The existence of a "compelling public interest" in disclosure will necessarily depend upon all of the surrounding facts and circumstances.
[4] In some instances, documents reflecting the mere fact of suspension or termination, without elaboration or comment as to the underlying reasons for the disciplinary action, can be properly classified as "personnel records," rather than "employee evaluation or job performance records." See, e.g., Ops. Att'y Gen. 2007-323; 2006-147;and 2002-150. These instances, however, appear limited to causes of suspension or termination, rather than lesser forms of discipline. *Page 1